IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-02169-CBS

ALMA ARLENE LAPP,
    Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f, for review of the Commissioner of Social Security's final decision denying Plaintiff, Ms. Lapp's, application for Supplemental Security Income benefits ("SSI"). Pursuant to the Order of Reference dated March 6, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. # 28). The court has reviewed the Complaint (filed August 13, 2013) (Doc. # 1), Defendant's Answer (filed October 22, 2013) (Doc. # 14), Plaintiff's Opening Brief (filed December 23, 2013) (Doc. # 19), Defendant's Response Brief (filed January 1, 2014) (Doc. # 20), Plaintiff's Reply Brief (filed February 4, 2014) (Doc. # 21), the entire case file, the administrative record, and the applicable law and is sufficiently advised in the premises.

I.      Procedural History

Ms. Lapp filed an application for SSI under Title XVI of the Act on March 30, 2010. (*See* Complaint (Doc. # 1) at 2 of 9). ¹ She alleged that she became disabled on September 4, 2001. (*See id.*; Record (Doc. # 15-6 at 8 of 44)).² She claimed disability based on depression, PTSD, anxiety, memory, right shoulder/arm nerve damage, avascular necrosis-right hip, pain, brain tumor and breast cancer. (*See* Doc. # 1-1 at 2 of 5). The claim was denied at the initial determination stage on September 17, 2010 and Ms. Lapp requested a hearing. (*See* Exhibits A, B to Complaint (Docs. # 1-1, # 1-2)). Administrative Law Judge George W. Merchant ("ALJ") held a hearing on November 3, 2011. (*See* Transcript (Doc. # 15-2 at 29-60 of 88)). Ms. Lapp was represented by counsel and testified at the hearing. (*See id.*; Appointment of Representative, Record (Doc. # 15-4) at 5 of 64). Mr. Kenneth A. Lister testified at the hearing as a vocational expert ("VE"). (*See id.*). The ALJ issued his written decision on November 15, 2011, concluding that Ms. Lapp had no past relevant work and was not disabled under the Act because based on her "age, education, work experience, and residual functional capacity," she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*See* Exhibit C to Complaint (Doc. # 1-3) at 14 of 18).

On January 4, 2012, Ms. Lapp requested review of the ALJ's decision. (*See* Exhibit D to Complaint (Doc. # 1-4)). The Appeals Council denied Ms. Lapp's request for review on June 14, 2013. (*See* Exhibit E to Complaint (Doc. # 1-5)). The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 416.1481; *Neilson v. Sullivan*, 992 F.2d 1118, 1119

---

¹ Ms. Lapp was previously awarded SSI benefits that were discontinued on August 15, 2007 because she was receiving unearned income in the form of alimony. (See Docs. # 15-2 at 47 of 88, # 15-4 at 13, 26 or 64).

² SSI payments cannot be made for any month prior to the month in which she filed her application. See 20 C.F.R. § 416.335.

(10th Cir. 1993) (citation omitted).  Ms. Lapp filed this action on August 13, 2013.  The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . .  decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted).  The court "must affirm . . . if the decision is supported by substantial evidence."  *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing  42 U.S.C. § 405(g)).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "may neither reweigh the evidence nor substitute [its] judgment for the [Commissioner's]."  *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001).  *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.  Ms. Lapp's Challenge to ALJ's Decision

An individual's eligibility for SSI payments shall be determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a "disability" as defined in the Act.  42 U.S.C. § 1382.  An individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.  At step four of the evaluation process, an ALJ must determine a claimant's Residual Functional Capacity (RFC).  The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments; the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751.  "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account her RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability.  The decision maker first determines the type of work, based on physical exertion (strength) requirements,

4

> that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> . . .
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52.

The record indicates that Ms. Lapp has a history of breast cancer that was diagnosed in 2001. Approximately a year later, she had small lesions in the brain that were possible metastases of the breast cancer. (*See* Doc. # 15-7 at 50-74 of 182). Her treatment included a mastectomy, chemo-therapy, radiation plus gamma knife, and hormonal therapy, most of which occurred more than five years before her March 30, 2010 application date for benefits. (*See* Doc. # 15-7 at 50-83, 141-42 of 182). There has been no recurrence of cancer. (*See id.* at 5, 118-19, 124, 128, 138, 149, 151-52, 173 of 182).

Following the five-step evaluation process, the ALJ determined that Ms. Lapp: (1) had not engaged in substantial gainful activity since the application date, March 30, 2010, (2) had severe impairments of "status post cancer of the breast and brain, avascular necrosis of the right hip, chronic headaches, depression, posttraumatic stress disorder (PTSD), and anxiety," (3) did not have an impairment or combination of impairments listed in or medically equal to one listed in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d),

5

416.925, 404.1526, and 416.926), (4) has the RFC "to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b)" with certain limitations, and (5) "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*See* Doc. # 1-3 at 7-14 of 18). Ms. Lapp challenges the ALJ's determination at step four of the evaluation process, claiming that the Commissioner erred by: (1) failing to include material psychological limitations in the RFC determination, and (2) giving controlling weight to the opinions of a non-examining medical consultant while giving little weight to the opinions of an examining physician. (*See* Doc. # 1 at 3-7 of 9).

A.     Analysis

In deciding that Ms. Lapp is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ had to determine her RFC "based on all the relevant medical and other evidence" in the case record. 20 C.F.R. § 416.920(a)(3). RFC determinations are for the ALJ to make "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). *See also* 20 C.F.R. § 416.946 (providing ALJ is responsible for assessing residual functional capacity).

At step four, the ALJ found that Ms. Lapp had the RFC to:

perform less than a full range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. She can sit for two hours and stand, or walk for a total of six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, and occasionally kneel, stoop, crawl, or balance but is precluded from climbing ladders, ropes, or scaffolds. Furthermore, the claimant's right side is limited to only occasional forward and overhead reaching. She is also precluded from any exposure to hazards such as unprotected heights and moving machinery. Moreover, the claimant is limited to the performance of simple, one to three step tasks, involving only simple work related decision making with few if any

6

>work place changes. Additionally, the claimant is limited to occasional interaction
>with the public, coworkers, and supervisors.

(*See* Doc. # 1-3) at 9 of 18).

### 1. Physical Limitations in Determination of RFC

Ms. Lapp alleges that the ALJ erred by giving lesser weight to Dr. Milliken's opinions, giving "great weight" to the opinions of the State agency medical advisor, and failing to provide a thorough explanation of the weight given to the medical opinion evidence. (*See* Doc. # 1 at 4-7 of 9,  Doc. # 19 at 13-14 of 16).

On October 17, 2011. William Milliken, M.D., prepared a disability assessment of Ms. Lapp. (*See* Doc. # 15-8 at 1-13 of 32).  In addition to his assessment, Dr. Milliken prepared a Physical Medical Source Statement and a Mental Impairment Questionnaire.  (*See* Doc. # 15-8 at 16-26 of 32).  Dr. Milliken ultimately opined "that Ms. Lapp is permanently disabled and that she is unable to return to any form of competitive gainful employment as a result of psychiatric illness."  (*See* Doc. # 15-8 at 12 of 32).  The ALJ ultimately concluded that Ms. Lapp has the RFC "to perform less than a full range of light work as defined in 20 CFR 416.967(b)."  (*See* Doc. # 1-3 at 9 of 18).  The ALJ gave little weight to Dr. Milliken's opinion for several reasons.

Dr. Milliken's opinion that Ms. Lapp is permanently disabled is not a medical opinion, but is instead an opinion on an issue reserved to the Commissioner of Social Security.  20 CFR § 416.927(e)(2).  "[A] physician's opinions on issues reserved to the Commissioner are not entitled to controlling weight or any special significance."  *Mayberry v. Astrue*, No. 11-5058, 461 F. App'x 705, 708 (10th Cir. Feb. 7, 2012).  *See also Franklin v. Astrue*, 450 F. App'x 782, 785 (10th Cir. 2011) (ALJ's decision to give little weight to opinion about disability because it was "unsupported by the accompanying treating medical clinic records, as well as invading the

ultimate issue of disability as reserved for the determination of the Commissioner" was supported by substantial evidence).

Dr. Milliken performed one consultative examination on a referral from Ms. Lapp's attorney. (*See* Doc. # 15-8 at 2 of 32). While the fact that an assessment was prepared at counsel's request, alone, does not justify assigning little weight to a medical opinion, the consistency of the opinion with the record as a whole is a legitimate factor to be considered. *Quintero v. Colvin*, No. 13-1396, 2014 WL 2523705, at ** 3-4 (10th Cir. June 5, 2014). The ALJ explained that Dr. Milliken's assessment was also "inconsistent with the claimant's own reported activities and level of functioning, as well as with the other objective" evidence. (*See* Doc. # 1-3 at 13 of 18). *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (internal quotation marks and citation omitted)). In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole. *See* 20 C.F.R. § 416.927(c)(4).

Ms. Lapp was 50 years old on the date she filed her application for benefits, March 30, 2010. (*See* Doc. # 15-2 at 33 of 88, Doc. # 1 at 3 of 9). She has one year of college education and worked in the past as a Licensed Practical Nurse. (*See* Doc. # 15-7 at 38-39, 45 of 182; Doc. # 15-2 at 44 of 88). At the November 3, 2011 hearing, Ms. Lapp testified that she lives with and cares for her 93 year old mother. (*See id.* at 33-35 of 88). She visits and entertains visits with family members. (*See* Doc. # 15-2 at 34, of 88). She testified that she could walk three or four blocks, climb stairs, and sit, stand, and do daily household chores for two to three hours, one hour at a time. (*See* Doc. # 15-2 at 39-40, 43, 53 of 88). She monitors her own and her mother's medications. (*See id.* at 41- of 88). The medications Ms. Lapp was taking at the

time of Dr. Milliken's assessment were Effexor for depression, Lorazepam for anxiety, Lovastatin for cholesterol, and Toprol XR for high blood pressure. (*See* Doc. # 15-8 at 8 of 32). She drives to the grocery store and the pharmacy one to two times per week and to medical appointments. (*See* Doc. # 15-2 at 34, 38, 41 of 88; Doc. # 15-7 at 38 of 182). Ms. Lapp does her own and her mother's laundry, grocery shopping, cooking, and light cleaning, as well as caring for her mother's pet rabbit and the garden. (*See id.* at 40-43 of 88). She is capable of managing her finances. (*See id.* at 44 of 88; Doc. # 15-7 at 42 of 182). She reads and watches television for 45 minutes at a time and does floral design as a hobby. (*See id.* at 34, 50 of 88). Dr. Milliken's opinion was inconsistent with Ms. Lapp's own reported activities and level of functioning.

On August 12, 2010, Ryan Otten, M.D., conducted a consultative examination of Ms. Lapp. (*See* Doc. # 15-7 at 44-49 of 182). Upon examination, Dr. Otten opined that she could lift and carry frequently up to 10 pounds and 15 to 20 pounds occasionally, stand and walk for two hours, and sit with no limitation in a normal eight hour workday. (*See id.* at 49 of 182). Dr. Otten further opined that Ms. Lapp would have some difficulties using her right upper extremities. The ALJ gave "great weight" to the opinions of Dr. Otten, finding them consistent with the objective record as a whole and supported by acceptable clinical and laboratory techniques.

On August 30, 2010, Stuart Lerman, M.D., a State agency physician, reviewed Ms. Lapp's medical records and assessed her limitations. (*See* Doc. # 15-3 at 9-11 of 15).[3] Dr. Lerman opined that she retained the ability to stand, walk, or sit six hours in an eight-hour day.

---

[3] "In claims adjudicated by the State agency, a State agency medical or psychological consultant may . . . provide one or more medical opinions." 20 C.F.R. § 416.927(e)(1). "State agency medical and psychological consultants and ... other medical specialists are highly qualified" and serve as "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i).

(*See id.* at 10 of 15). The ALJ accorded Dr. Lerman's opinion greater weight than Dr. Milliken's opinion because it was internally consistent and also consistent with the evidence as a whole. (*See* Doc. # 1-3 at 13 of 18).

Dr. Milliken's ultimate opinion of disability was not consistent with other medical evidence in the record, including portions of his own assessment. For example, Dr. Milliken notes "[r]ight hip disease . . . dependent on further medical record review for confirmation." He acknowledges that "[t]he current status of this condition is unknown" and notes Ms. Lapp's "subjective complaints." (*See* Doc. # 15-8 at 12 of 32). The ALJ addressed the medical record regarding hip pain. The medical record showed only remote treatment, that x-rays revealed "a normal right hip series, with no abnormalities," and that "recent physical examinations reveal normal range of motion and gait" (*See* Doc. # 1-3 at 11 of 18, Doc. # 15-7 at 43, 175 of 182, *see also* Doc. # 15-7 at 158 of 182 ("Strength in both upper and lower extremities is normal. . . . Routine gait is normal.")).

Dr. Milliken indicated that Ms. Lapp could sit at least 6 hours in an 8-hour working day, could stand two hours at one time, did not require a job that permits shifting positions at will from sitting, standing, or walking, was able to stoop/bend, crouch/squat, and climb stairs, was able to use her hands, fingers and arms from limited to full extent. (*See* Doc. # 15-8 at 17-18 of 32). These assessments and conclusions are not consistent with his opinion of disability. The court also notes that much of Dr. Milliken's assessment is based upon nothing more than Ms. Lapp's subjective descriptions. (*See* Doc. # 15-8 at 5-9 of 32). Ms. Lapp's subjective descriptions of her symptoms, alone, are not enough to establish a physical or mental impairment. 20 CFR § 416.928(a).

The ALJ determined that Ms. Lapp's limitations were consistent with "less than a full range of light work". (*See* Doc. # 1-3 at 9 of 18). "Light work" encompasses "sitting most of the time." (*See* 20 C.F.R. § 416.967). This determination is compatible with medical and other evidence in the record, including portions of Dr. Milliken's assessment, if not his ultimate opinion of disability. According to Dr. Milliken's and other assessments, Ms. Lapp is able to sit at least six hours in an eight-hour work day. (*See* Doc. # 15-7 at 49 of 182, Doc. # 15-8 at 17 of 32, Doc. # 15-3 at 10 of 15). There is no evidence in the record that she is limited in any way regarding pushing or pulling. (*See* 20 C.F.R. § 416.967). The ALJ's determination of Ms. Lapp's RFC is not contrary to Dr. Milliken's assessment that she could stand two hours "at one time, e.g., before needing to sit down, walk around, etc."

The court concludes that the ALJ's decision to give lesser or greater weight to the opinions of Dr. Milliken and the State agency medical advisor is supported by the record. The ALJ gave satisfactory reasons, tied to the appropriate factors, for the weight he assigned to Dr. Milliken's opinion. The medical records, Ms. Lapp's daily activities, the type of medication she used, and portions of Dr. Milliken's own assessment do not support his conclusion of disability. The court finds no record support for Ms. Lapp's assertion that the ALJ failed to provide a complete review of the medical opinion evidence.

      a.     Psychological Limitations in Determination of RFC

Ms. Lapp alleges that the ALJ erred by failing to include material psychological limitations in his RFC determination. (*See* Doc. # 1 at 3-4 of 9). The ALJ determined that she "is limited to the performance of simple, one to three step tasks, involving only simple work related decision making with few if any work place changes. Additionally, the claimant is limited to occasional

11

interaction with the public, coworkers, and supervisors." (*See* Doc. # 15-2 at 19 of 88). Ms. Lapp argues that the ALJ did not consider the moderate limitations in her ability to complete a normal workday or workweek due to psychologically based symptoms or her moderate inability to perform at a consistent pace without an unreasonable number and length of rest periods. (*See* Doc. # 19 at 13 of 16;  Doc. # 15-3 at 11-13 of 15).

With respect to Ms. Lapp's mental impairments, Robert Brill, Ph.D., a State agency psychologist, reviewed the record. (*See* Doc. # 15-3 at 8, 11-13 of 15). He opined that Ms. Lapp had severe mental impairments, but that they did not meet the requirements of any section of the Listings. (*See id.* at 8 of 15). He completed a mental RFC assessment, finding in his summary conclusions that Ms. Lapp was moderately limited in a number of abilities, including the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*See id.* at 11-13 of 15). He also completed narrative conclusions in which he opined that, with treatment and medication compliance, Ms. Lapp was able to do simple basic work and would function best in a work-setting with few social demands with coworkers, supervisors or the public. (*See* Doc. # 15-3 at 13 of 15). The ALJ gave Dr. Brill's narrative opinion great weight because it was internally consistent and consistent with the evidence as a whole. (*See* Doc. # 1-3 at 13 of 18). The ALJ "was entitled to rely on the doctor's narrative interpretation of her findings." *Stenson v. Astrue*, No. 11CV1054-BEN (BLM), 2012 WL 1154400, at * 7 (S.D. Cal. Mar. 15, 2012). *See also Wilson v. Astrue*, 2011 WL 97234, (D. Colo. Jan. 12, 2011) (ALJ's failure to mention a moderate limitation was not error where ALJ's conclusion regarding claimant's mental RFC "accounted for" state agency psychiatrist's narrative summary conclusions that "encapsulate[d]" the moderate limitation). The ALJ

ultimately accepted the overall opinion that Ms. Lapp is able to do simple routine work, in a setting with few social demands.  (*See* Doc. # 15-3 at 13 of 15;  Doc. # 1-3 at 9 of 18).

John Shybut, Ph.D., conducted a psychological evaluation of Ms. Lapp on August 10, 2010.  (*See* Doc. # 15-7 at 38-42 of 182).  Based on a review of her history and his examination, he diagnosed her with depressive disorder and PTSD.  (*See id.* at 41).  Regarding her current adaptive functioning, he opined that she "is capable of doing her activities of daily living. . . She is able to sustain concentration and attention needed for task completion and is able to understand and remember short and simple instructions.  She is also able to carry out short and simple instructions under ordinary supervision.  She may have difficulty relating to coworkers due to her physical and mental problems.  At her own pace, she is able to adjust to changes in the environment." (*See id.*).  He noted that medication provided her some relief from depression and anxiety and recommended that she start psychotherapy to address her PTSD.  The ALJ gave great weight to the opinion of Dr. Shybut as his opinion was consistent with the objective record as a whole and supported by acceptable clinical techniques.  (*See* Doc. # 1-3 at 12-13 of 18).

While Ms. Lapp has received treatment for her allegedly disabling symptoms, the record indicates that the treatment has generally been successful in controlling those symptoms. Regarding her diagnosis of major depressive disorder and PTSD in April of 2006 at the Centennial Mental Health Center, she was prescribed medications to treat her symptoms and received ongoing medication management.  (*See* Doc. # 15-7 at 9-11 of 182).  Through medication management, her depressive symptoms were in remission and she was "[c]oping with situational stressors." (*See id.* at 11 of 182).  Her mood and concentration were "good" and she was sleeping "fine." (*See id.*).  At her next appointment on July 8, 2009, she reported she

13

had travelled to Delaware for her daughter's graduation from college.  (*See* Doc. # 15-7 at 14 of 182).  Her "[m]ood has been 'dandy.'  Concentration is good.  Energy level is normal rate.  Appetite is good.  She is sleeping well at night."  (*See id*).  Her "[d]epressive symptoms continu[ed] in remission" and she was "coping with interpersonal stress."  (*See id.*).  At her next appointment on October 7, 2009, she reported that she continued to work for a courier service and while her mood "has been 'down more than up,' her "[c]oncentration is good.  Energy is normal rate.  Appetite is good.  She is sleeping okay at night."  (*See* Doc. # 15-7 at 19 of 182).  On January 13, 2010, she reported that she continued to work for the courier service 2 days a week and she was coping well with family stress over the holidays.  (*See* Doc. # 15-7 at 22 of 182).  She reported that she occasionally went out to dinner and to see a movie.  (*See id.*).  Her mood was "okay.  Concentration is fair.  Energy level is not as good as she would like.  Appetite is okay.  She is sleeping well at night."  (*See id.*).

The court rejects Ms. Lapp's argument that the ALJ erred in his mental RFC determination by failing to mention her moderate limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*See* Doc. # 15-3 at 11-13 of 15).  The ALJ's determination of Ms. Lapp's mental RFC is supported by the medical evidence in the record, the evidence of Ms. Lapp's daily activities, and the evidence as a whole.  *See Atkinson v. Astrue*, No. 09-1369, 389 F. App'x 804, 8078-08 (10th Cir. July 29, 2010) (finding no error in ALJ's failure to mention moderate limitation in claimant's ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms," where ALJ accepted ultimate opinion that all of claimant's limitations would not preclude non-complex work);  *Stenson v. Astrue*, 2012 WL 1154400, at * 7 (holding that ALJ was not required

to discuss every piece of evidence in the record and noting that ALJ properly accounted for limitations by adopting the state-agency psychiatrist's overall opinion that plaintiff retained adequate function to do simple repetitive tasks).

IV.     Conclusion

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Lapp was not disabled within the meaning of Title XVI of the Social Security Act and therefore not eligible to receive Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

DATED at Denver, Colorado, this 3rd day of September, 2014.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge